JACKSON v. N.C. DEPT. OF CRIME CONTROL AND PUBLIC SAFETY

[97 N.C. App. 425 (1990)]

ALLAN TODD JACKSON v. N.C. DEPARTMENT OF CRIME CONTROL AND
PUBLIC SAFETY

No. 8910IC550

(Filed 20 February 1990)

1. **State § 8.2 (NCI3d)— arrest of inebriated plaintiff—excessive force used by officers—sufficiency of evidence**

Evidence was sufficient to support findings by the Industrial Commission that defendant's officers used excessive force in arresting plaintiff where the evidence tended to show that there were five law enforcement officers present to arrest the inebriated plaintiff; he was never abusive or profane and made no attempt to escape; he did not respond quickly to officers' requests that he get in the patrol car and remain seated; and officers struck him five times about the neck and shoulders with a blackjack and banged his handcuffs more tightly closed with a metal flashlight.

**Am Jur 2d, Arrest, § 80; Municipal, County, School, and State Tort Liability §§ 464-466.**

2. **State § 8.2 (NCI3d)— intentional violent restraint of intoxicated plaintiff—excessive force not intended—officers negligent—action under Tort Claims Act proper**

The Industrial Commission's conclusion that defendant's officers were negligent in using more force than was necessary, thus injuring the intoxicated plaintiff, was supported by its findings that the officers intended violently to restrain plaintiff, did not intend to use excessive force, but in fact did.

**Am Jur 2d, Arrest § 80; Municipal, County, School, and State Tort Liability §§ 464-466.**

3. **State § 9 (NCI3d)— Tort Claims Act—injury to plaintiff's hand—amount of compensation proper**

The amount of damages for pain and suffering and partial disability awarded by the Industrial Commission to plaintiff who sustained injuries when he was struck by officers during an arrest was not excessive where the right handed plaintiff had continued intermittent pain and weakness in his right wrist; the dorsal side of his right hand remained numb; as a result of the injury plaintiff was no longer able to perform

some tasks in his work as an upholsterer; plaintiff had particular difficulty during damp or cold weather; and he experienced wrist pain when using pliers, picking up furniture, or cutting fabric in his work.

**Am Jur 2d, Damages § 324.**

APPEAL by defendant from order of North Carolina Industrial Commission entered 22 March 1989. Heard in the Court of Appeals 18 October 1989.

*James R. Vosburgh for plaintiff-appellee.*

*Lacy H. Thornburg, Attorney General, by D. Sigsbee Miller, Associate Attorney General, for the State.*

GREENE, Judge.

This is an appeal from the Industrial Commission. The plaintiff, Allan T. Jackson sought damages under the Tort Claims Act for injuries allegedly resulting from negligent acts of defendant's agents. The Commission found for plaintiff, and the defendant appeals.

At approximately 12:35 a.m. on 12 April 1986 North Carolina Alcohol Law Enforcement (ALE) agents, Richard Thornell and Warren Hopkins, stopped the plaintiff and his wife as the plaintiff was driving along a public highway. The plaintiff is 22 years old, six feet, four inches tall and weighs 215 pounds. Agent Thornell is six feet, three inches tall and weighs approximately 205 pounds and Agent Hopkins is approximately five feet, ten inches tall and weighs about 200 pounds. The Industrial Commission found, in part, the following facts:

6. After stopping the plaintiff's vehicle, Agents Thornell and Hopkins radioed for a Highway Patrolman to be dispatched to the scene.

7. Agents Thornell and Hopkins alighted from their vehicle and walked forward to the plaintiff's vehicle and asked him to get out. After some extended inquiry by the plaintiff as to why he was being stopped, and after repeated requests by the A.L.E. Agents that he get out of his vehicle, the plaintiff complied with their request and got out of the jeep on the driver's side. His wife, Tracy Jackson, was present and sitting on the passenger side front seat.

8. At this time Trooper Leroy Oglethorp Batts, III arrived on the scene as did Grifton Police Officer Robert Jones and Grifton Auxiliary Police Officer Joe Wade in a separate vehicle. Trooper Batts is five feet, nine inches tall and at the time of this incident weighed between 190 and 195 pounds. He was 24 years of age as of April 12, 1986.

9. Trooper Batts got out of his Highway Patrol vehicle and approached the plaintiff and his wife and A.L.E. Agents Thornell and Hopkins who were standing outside of the passenger side of the plaintiff's jeep. Trooper Batts asked the agents, "Have we got a problem here?" He conferred briefly with the A.L.E. Agents and then placed the plaintiff under arrest and handcuffed him with his hands behind his back.

10. Trooper Batts and Agent Thornell then escorted the handcuffed plaintiff to the Trooper's patrol car and placed him inside the vehicle on the passenger side.

11. The plaintiff continued to ask the officers why they were doing this to him and complained that the handcuffs were clamped on so tight that they were hurting his wrists. While Agent Thornell and Trooper Batts were engaged in conversation outside the Highway Patrol vehicle, the plaintiff with his hands still cuffed behind his back, opened the door to the patrol vehicle and placed his right foot on the ground and attempted to stand up beside the patrol vehicle again asking the officers why he had been arrested.

12. After the intoxicated plaintiff did not immediately obey an instruction to get back in the patrol vehicle, Trooper Leroy Oglethorp Batts, III drew his standard issue convoy or blackjack and struck the plaintiff about the shoulders, neck and head approximately five times. At the same time, Agent Thornell grabbed the plaintiff by the right wrist and proceeded to bang the handcuffs more tightly closed with his metal flashlight, thereby increasing the pressure to the plaintiff's wrists.

13. Begging the officers not to hurt him anymore, the plaintiff was placed back in the patrol vehicle. Subsequently, the plaintiff was transported by Trooper Batts to the Ayden Police Department where a breathalyzer test was administered resulting in a blood alcohol reading of .11.

14. When the plaintiff's handcuffs were finally removed by Trooper Batts at the command of his supervisor, Sgt. Blackman, the plaintiff's wrists were swollen and the right wrist and arm was swollen to the point that the arm was roughly the same size from the elbow to the hand. The skin on his right wrist was bruised; it was deeply indented where the cuffs had been and the skin was a blue or reddish color and a scab formed subsequently where the cuff had been on his right wrist.

15. As a result of the blows inflicted on the plaintiff by Trooper Batts and Officer Thornton, the plaintiff suffered contusions to his neck and wrist for which he sought medical treatment at the emergency room of the Pitt County Memorial Hospital after he was taken to Ayden for a breathalyzer test.

16. The plaintiff has continued to seek medical treatment for the injury to his right wrist because he has continued to experience intermittent pain and weakness and the dorsal side of his right hand remains numb. He has had particular difficulty during damp or cold weather with his right wrist. The plaintiff is right-handed. The condition of his wrist causes him pain when he must use pliers, pick up furniture or cut fabric with scissors in his work as an upholsterer and there are some tasks he can no longer perform. The plaintiff had no prior problems with his right wrist.

17. There is insufficient expert medical evidence to support a finding of permanent injury to the plaintiff's right wrist.

18. Some of the actions of Trooper Batts and the A.L.E. Agents were observed by Mrs. Janie Haddock, whose front porch was approximately 50 feet from where the incident took place. David Springer, an acquaintance of the plaintiff and his wife, observed the Trooper and Agent Thornell escort the handcuffed plaintiff to the Highway Patrol vehicle from his jeep.

19. The various accounts provided by the law enforcement personnel involved in this matter were significantly contradictory. For instance, Agent Hopkins testified that he and Agent Thornell and Trooper Batts had to wrestle the plaintiff to the ground before they were able to place handcuffs upon him. This account was specifically denied by the plaintiff and his wife and no mention was made of such an episode by

Trooper Batts, Agent Thornell or Grifton Police Officer Robert Jones. The officers also varied widely in their description of the relative contributions of Agent Hopkins and the Grifton Police Officers. Also, Agent Thornell testified that Trooper Batts pulled the plaintiff out of the patrol vehicle with the convoy around the plaintiff's neck while Trooper Batts himself claimed that he pulled the plaintiff out with his fingers in the plaintiff's ears.

20. The contention of law enforcement personnel that the plaintiff was not handcuffed when he was struck by Trooper Batts is directly refuted by the testimony of the plaintiff, his wife and an eyewitness, David Springer. The officer's account is indirectly refuted by or is inconsistent with the testimony of eyewitness Jane Haddock whose observation of the events in question was interrupted on several occasions by her attempts to awaken her husband. Mrs. Haddock observed the arrival of Trooper Batts and his inquiry as to whether or not there was a problem. At this juncture she attempted to awaken her husband again and when she returned to observe the situation, the plaintiff was in the highway patrol car and his wife was "hollering" and hysterical. This behavior of the plaintiff's wife prior to any struggle and before his being struck is consistent with the testimony that he had been handcuffed prior to being placed in the patrol vehicle but is inconsistent with the version offered by Trooper Batts wherein he described a calm, uneventful and voluntary stroll by the plaintiff to the passenger side of the highway patrol vehicle.

21. Trooper Batts' testimony that the plaintiff was struck only on his upper arm and wrist is refuted by the findings of Dr. Roy Graves who examined the plaintiff in the emergency room and noted: "contusions to the neck and wrist" and "multiple areas of ecchymosis over posterior neck and medial left trapezius."

22. Trooper Batts intentionally struck the plaintiff believing that these blows would persuade the intoxicated plaintiff to do as he had been instructed by Trooper Batts. Employing what he alleged to be a defensive technique, Agent Richard Thornell intentionally struck the plaintiff on the wrist with his metal flashlight. Both men believed they were employing reasonable and lawful force to effect an arrest and detention.

Neither intended an unlawful assault. Neither man intended to use excessive or unreasonable force under all the circumstances.

23. The fact of the plaintiff's intoxication which precipitated his being stopped in the first place also reduced his ability to respond quickly and intelligently to instructions.

24. By all accounts the plaintiff and his wife were neither profane nor verbally abusive towards the officers at this time. More importantly, there was no evidence whatsoever that the plaintiff at any time threatened, struck or attempted to strike any of the law enforcement personnel involved. Likewise, there was no evidence that the plaintiff, by exiting the patrol car, was trying to escape—he merely continued his intoxicated inquiry as to why he had been stopped and arrested. Finally, there were no reasonable grounds for belief by the law enforcement personnel that the plaintiff and his wife were armed or desperate people.

25. Considering the physical sizes of the plaintiff and the officers involved, the absence of any hostile or aggressive conduct on his part and the presence of five adult males including a Highway Patrol Officer, two A.L.E. Agents, a Grifton Police Officer and a Grifton Auxiliary Police Officer, the striking of the plaintiff by Trooper Batts and Officer Thornton was not necessary to effect the arrest and detention of the plaintiff or protect the law enforcement personnel involved.

26. The striking of the handcuffed and intoxicated plaintiff for his failure to obey Trooper Batts' instruction to stay seated was unreasonable under all the circumstances and the force employed by Agent Thornell and Trooper Batts was excessive. The excessive use of force by Trooper Batts and Agent Thornell was negligent.

The Industrial Commission concluded that the plaintiff's arrest was legal, that Agents Thornell and Batts "negligently used excessive force resulting in injury and damage to the plaintiff," that these injuries were not intentionally inflicted, and that the plaintiff was not contributorily negligent. The Commission ordered that the plaintiff recover from the defendant $249.00 for medical expenses and $9,000.00 for pain and suffering and partial disability.

The issues presented are I) whether the evidence supports the Commission's finding that defendant's agents used excessive force in arresting the plaintiff; II) whether the Commission's findings support its legal conclusion that plaintiff was injured as a result of defendant's agents' negligent rather than intentional acts; and III) whether the award was excessive.

## I

[1] The defendant argues that Trooper Batts and Agent Thornell used reasonable force to bring the plaintiff under control and to affect his arrest. Thus, the defendant excepts to the Commission's findings nos. 24 and 25 which essentially detailed facts showing the defendant's agents used excessive force. "[T]he findings of fact of the Commission shall be conclusive if there is any competent evidence to support them." N.C.G.S. § 143-293 (1987); *Mackey v. North Carolina State Highway Comm.*, 4 N.C. App. 630, 633, 167 S.E.2d 524, 526 (1969). Our review of the record reveals competent evidence to support these findings, and thus we overrule these exceptions.

## II

[2] The defendant next argues that since the findings of fact show the defendant's agents intended to strike the plaintiff, no cause of action lies under the Tort Claims Act which provides State liability only for negligent acts. In essence, the defendant asserts that, as a matter of law, the Commission's findings cannot support its conclusions. We review for errors of law "under the same terms and conditions as govern appeals in ordinary civil actions. . . ." N.C.G.S. § 143-293.

The Tort Claims Act, N.C.G.S. § 143-291 et seq. (1987), provides for the State's liability. only for the negligent acts or omissions of its employees. *See Phillips v. North Carolina Dept. Transp.*, 80 N.C. App. 135, 341 S.E.2d 339 (1986). "Negligence is a mixed question of fact and of law." *Lowe v. North Carolina Dept. Motor Vehicles*, 244 N.C. 353, 359, 93 S.E.2d 448, 452 (1956). The defendant cites *Jenkins v. North Carolina Dept. Motor Vehicles*, 244 N.C. 560, 563, 94 S.E.2d 577, 580 (1956), for the proposition that the acts described in the Findings cannot constitute negligence since "an intentional act of violence is not a negligent act." The Court in *Jenkins* also stated that " '[n]egligence, a failure to use due care, be it slight or extreme, connotes inadvertence.' " 244 N.C.

at 563-64, 94 S.E.2d at 580 (citation omitted). However, an actor may intend to act in one way, yet inadvertently act in another way. We reject the defendant's argument that its agents' intent to use reasonable force to restrain the plaintiff made it legally impossible for them to negligently exceed the limits of reasonableness. "One who undertakes to do something and does it negligently commits a *negligent* act. . . ." *Mackey*, 4 N.C. App. at 634, 167 S.E.2d at 526 (emphasis in original).

The Commission found as fact that although the defendant's agents intended to violently restrain the plaintiff, they did not intend to use excessive force, but in fact did. Thus the Commission's conclusion that the defendant's agents were negligent in using more force than was necessary, thus injuring the plaintiff, is supported by the findings.

## III

[3]  The defendant last argues that the award of $9,249.00 was excessive. Of that amount only $249.00 was for medical bills. The remainder was for pain and suffering and partial disability. The amount of damages awarded is a matter within the discretion of the Commission. The Commission's order may not be disturbed unless, in view of the Commission's findings as to the nature and extent of the injury, the award is so large as to shock the conscience. *Brown v. Charlotte-Mecklenburg Board of Education*, 269 N.C. 667, 671, 153 S.E.2d 335, 339 (1967). Here the Commission's findings reflect that the defendant's agents beat the plaintiff about the head and neck and wrist with a blackjack and other weapons resulting in contusions to his neck and wrist. The findings indicate the plaintiff has continued intermittent pain and weakness in his right wrist, and the dorsal side of his right hand remains numb. Also, as a result of the injury the plaintiff is no longer able to perform some tasks in his work as an upholsterer. The plaintiff, who is right handed, has particular difficulty during damp or cold weather with his right wrist, and he experiences wrist pain when using pliers, picking up furniture or cutting fabric in his work. We cannot say as a matter of law that the award shocks the conscience.

Affirmed.

Judges EAGLES and PARKER concur.