* * * * * * * * * * *
In accordance with the directives of the North Carolina Supreme Court, the Full Commission enters the following Decision and Order.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
2. The accident involving plaintiff, which is the subject of this claim, occurred on July 18, 1998 in the African Pavilion of the North Carolina Zoological Park.
3. The plaintiff's date of birth is April 1, 1940, so at the time of the accident which is the subject of this claim, plaintiff was 58 years old.
4. The mortuary tables of N.C. Gen Stat. § 8-46 are in evidence. According to those tables, plaintiff had a life expectancy at the time of the hearing before the Deputy Commissioner on August 13, 2001 (at her then age of 61) of 20.4 years.
5. All deposition exhibits are authentic and admissible into evidence. Plaintiff's medical record and bills, paginated from C-0001 through C-0874, are authentic and genuine and are in evidence.
6. Plaintiff's medical records and X-rays (including positives of X-rays) are in evidence and can be used for substantive and illustrative purposes, and such items can be used by either party in lieu of medical expert testimony. The parties agreed that no medical expert testimony would be required by live appearance, deposition or video deposition.
7. The surgeries performed at UNC Hospitals by Dr. Bos, in Raleigh by Dr. Fajgenbaum, and in Ohio by Dr. Pugh and the rehabilitation treatments plaintiff received in North Carolina and Ohio were necessary, related and resulted from the injuries plaintiff suffered in the accident which is the subject of this claim. The cost of those treatments was $80,094.67. *Page 3 
8. The report from Dr. Pugh in Ohio is admitted into evidence in lieu of deposition testimony.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was injured at the North Carolina Zoological Park's African Pavilion on Saturday, July 18, 1998 when an approximately 34-foot tall ficus benjamina, a tropical tree with multiple trunks, fell onto a nearby Traveler's tree, a portion of which then broke off and fell on plaintiff.
2. At the time of her injury, plaintiff was a lawful visitor to the Zoo's African Pavilion, a fully-enclosed, indoor facility.
3. The ficus tree was located in the center of a concrete planter, 7-10 feet from the walkways. The ficus tree had previously fallen over on June 27, 1988. After that fall, since the ficus tree and its roots appeared healthy, it was replanted in the same planter and six 7-strand, 3/8" cables going in four directions were looped around the tree and attached to the planter's walls. These cables were used to aid the tree in keeping it upright and to assist in monitoring the tree.
4. There was no evidence that the first of the two named employees, Ron Ferguson, has any involvement with the tree that fell on plaintiff.
5. Named employee Virginia Wall had been employed by defendant as its Curator of Horticulture since 1987. Ms. Wall, an expert in zoological horticulture in outdoor conservatory type environments and in growing tropical plants, was responsible for the management of all of *Page 4 
the Zoo's indoor and outdoor plants, including the ficus tree, through the supervision of 50 Zoo staff members.
6. After the ficus tree was cabled following its earlier fall on June 27, 1988, Zoo personnel supervised by Virginia Wall checked the cables on the tree monthly for slack, tension, and deterioration. The monthly cable check was a method of monitoring what the tree was doing and tracking the tree's movements to determine how the tree was shifting.
7. The ficus tree was pruned twice a year to remove the weight of new foliage, to balance the tree and its root system, curtailing any shifting or change in position, removing any disease and decay, and to allow for aesthetics and more light transmission. This tree was scheduled as the number one priority tree to be pruned during the summer pruning to begin on July 20, 1998 due to its heavy canopy.
8. Each week before the facility was opened to the public, the foliage of the plants in the Zoo's African Pavilion was syringed with a hose to add humidity to the air, to wash foliage, and to control insect infestations. The ficus tree had last been syringed, thereby adding more weight to the tree's canopy, by Zoo personnel supervised by Virginia Wall at 9:00 a.m. on July 18, 1998, approximately six hours before the accident.
9. As a result of the ficus tree falling and injuring plaintiff, she underwent an open reduction and internal fixation to repair her fractured right femur at UNC Hospitals. This operation involved installation of a rod screwed into the ball end of the fractured femur and a plate affixed to the lower shaft of the fractured femur with metal screws to hold plaintiff's fractured femur together. During the surgery, surgeons had to cut and reattach a tendon to bring the splintered pieces of bone together. *Page 5 
10. As a further consequence of the July 18, 1998 accident, plaintiff suffered compression fractures to 3 vertebrae in her spine, as well as several fractured ribs.
11. On July 23, 1998, plaintiff was transferred to in-patient rehab to begin extensive rehabilitation of her fractured right femur. On August 6, 1998, after 20 days of hospitalization and in-patient rehab, plaintiff was discharged to her home with a hospital bed, walker, and bedside commode and with orders to continue her rehabilitation with the assistance of home health care.
12. Over the next six months, plaintiff continued to experience pain in her right leg when attempting to bear weight or walk, as well as pain in her back and ribs.
13. As of December 2, 1998, almost five months after the accident, plaintiff had not recovered to the point that she was independent, had not driven an automobile since the accident at the Zoo, and was unable to walk without a cane.
14. On January 8, 1999, Dr. Fajgenbaum, an orthopedic surgeon, diagnosed plaintiff with a non-union of her fractured right femur and advised plaintiff that to correct it, she needed a second operation on her right leg.
15. On January 19, 1999, Dr. Fajgenbaum performed a second operation removing the original hardware from plaintiff's right femur, correcting the rotation deformity internally, and replacing the old rod, plate and screws with new hardware of the same type. In addition, this second operation also involved making a new incision into plaintiff's pelvis to remove bone, which was surgically chipped out and used to pack the area of non-union in her fractured femur.
16. Following this second operation, plaintiff underwent another round of physical therapy and rehabilitation in an effort to correct her abnormal gait. *Page 6 
17. Despite the second operation and subsequent extensive physical therapy and rehabilitation, plaintiff continued to suffer from pain in her right knee and continued to have difficulty walking, requiring her to use a cane.
18. On July 6, 2000, plaintiff underwent a third operation with Dr. Kevin J. Pugh, an orthopedic surgeon in Ohio who specializes in post-traumatic fractures. This surgery consisted of a distal femoral osteotomy and placement of additional hardware, to correct her right femoral malunion and the continuing problems with her right leg.
19. Dr. Pugh prescribed outpatient physical therapy for plaintiff, which plaintiff underwent for several months. Plaintiff last saw Dr. Pugh on February 21, 2001 at which time plaintiff reported that she was overall very happy with a mild amount of pain at the end of the day. Dr. Pugh also indicated that plaintiff's leg lengths and muscle strength were equal with no residual deformity and that she walks with a normal gait.
20. Plaintiff has also been diagnosed with vertigo since the date of the accident.
21. Plaintiff's medical expenses, incurred as a direct and proximate result of the injuries she suffered when she was struck by the falling tree on July 18, 1998, are $80,094.67.
22. The injures plaintiff sustained as a direct and proximate result of the accident have resulted in a permanent impairment rating of 10% of plaintiff's whole person.
23. The reasonable value of the damages which plaintiff incurred as a proximate result of the injury caused by defendant's named employees is $400,000.00.
24. On Saturday, July 18, 1998, the day the ficus tree fell at the Zoo and proximately caused plaintiff's injuries, Zoo personnel supervised by Virginia Wall knew that: (a) the ficus tree had fallen over once before, in 1988, when the ficus tree was not cabled; (b) after theficus tree fell in 1988, cables were added to aid in keeping theficus tree upright and to serve as a *Page 7 
means of monitoring the tree's movements; (c) the ficus tree had the maximum amount of foliage and a heavy canopy such that it was the number one priority for the summer pruning which was scheduled to begin the following Monday, July 20, 1998; and (d) the 34-foot tall ficus tree was planted 7-10 feet from the African Pavilion's walkways, where Zoo patrons regularly walked and stood as they toured the African Pavilion.
25. On Saturday, July 18, 1998, Virginia Wall and the Zoo personnel she supervised had express or implied knowledge that the ficus tree posed a dangerous condition and constituted a hidden hazard upon the Zoo's premises.
26. Despite having knowledge that the ficus tree posed a dangerous condition and a hidden hazard upon the Zoo's premises, Virginia Wall and Zoo personnel she supervised unnecessarily exposed lawful visitors to the Zoo, including plaintiff, to danger by allowing them to stand and walk on a walkway within 7-10 feet of the ficus tree.
27. Despite having knowledge of the hidden danger posed by theficus tree, neither Virginia Wall nor the Zoo personnel under her supervision took any action to warn lawful visitors to the Zoo, including plaintiff, of the dangerous condition and hidden hazard posed by the ficus tree.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The Zoo is, and was on the date of the loss incurred by plaintiff, a state agency subject to the jurisdiction of the North Carolina Industrial Commission, pursuant to the Tort Claims Act, N.C. Gen. Stat. § 143-291 et seq. *Page 8 
2. "Under the Tort Claims Act, negligence is determined by the same rules as those applicable to private parties." Bolkhir v. N.C. StateUniv., 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). To establish negligence a plaintiff must show that defendant failed to exercise due care in the performance of a legal duty owed to plaintiff under the circumstances, and that the negligent breach of that duty was the proximate cause of plaintiff's injury. Id.
3. Under the premises liability legal standard articulated by the North Carolina Supreme Court in Nelson v. Freeland, 349 N.C. 615, 632,507 S.E.2d 882, 892 (1998), landowners in North Carolina have "a duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors."
4. In order to satisfy the landowner's duty to exercise reasonable care in the maintenance of the landowner's premises for the protection of lawful visitors, the landowner may not "unnecessarily expose a lawful visitor to danger and [the landowner must] give warnings of hidden hazards of which the landowner has express or implied knowledge."Bolick v. Bon Worth, Inc., 150 N.C. App. 428, 430, 562 S.E.2d 602, 604,disc. review denied, 356 N.C. 297, 570 S.E.2d 498 (2002); Grayson v.High Point Development Ltd. Partnership, 175 N.C. App. 786, 788-89,625 S.E.2d 591, 593, disc. review denied, 360 N.C. 533, 633 S.E.2d 681
(2006).
5. Under the premises liability legal standard articulated inNelson v. Freeland, the reasonableness of a defendant landowner's actions to maintain the landowner's premises for the protection of lawful visitors depends upon the circumstances of the case, including the nature of the property involved and the intended use of that property. Martishius v. Carolco Studios, Inc., 355 N.C. 465, 475,562 S.E.2d 887, 893-94 (2002). Accordingly, defendant had a duty to exercise such reasonable care as a landowning proprietor, running a zoo while maintaining a *Page 9 
significant degree of control over the flora maintained therein by defendant's personnel for the entertainment and education of defendant's lawful, paying visitors, would exercise under the circumstances.Id.
6. Defendant breached its duty to exercise reasonable care in the maintenance of its premises for the protection of lawful visitors, including plaintiff, and was negligent in that defendant had express or implied knowledge that the ficus tree posed a dangerous condition and constituted a hidden hazard upon the Zoo's premises, failed to warn plaintiff, a lawful visitor upon the Zoo's premises, of this dangerous condition and hidden hazard; and unnecessarily exposed plaintiff to the danger posed by the ficus tree. Id.
7. As a direct and proximate cause of the negligence of defendant, a state agency, by and through the negligence of its agent Virginia Wall and the Zoo personnel she supervised, acting within the course and scope of her employment, plaintiff was severely and permanently injured, entitling her to compensatory damages in the amount of $400,000.00.Jackson v. N.C. Dept. of Crime Control and Public Safety,97 N.C. App. 425, 388 S.E.2d 770 (1990).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. The defendant shall pay the plaintiff $400,000.00 for compensatory damages.
2. Defendant shall pay the costs.
This the 27th day of August, 2008 *Page 10 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER